## 61649. KROFFT DEVELOPMENT CORPORATION v. QUO MODO, INC.
## 61650. KROFFT DEVELOPMENT CORPORATION v. SUPERIOR RIGGING & ERECTING COMPANY, INC.

QUILLIAN, Chief Judge.

Appellees both brought suits on open accounts alleged to be with appellant. The cases were consolidated in a bench trial resulting in judgments for appellees, from which this appeal is taken. *Held:*

1. Appellant claims error because there is no evidence of any contractual relationships between it and appellees.

Appellees' accounts arose from redesign and reconstruction work done on a carousel or merry-go-round in an indoor amusement park called The World of Sid & Marty Krofft located in the Omni International in Atlanta. The park opened in June 1976 and closed in November 1976.

There were several legal entities involved in the amusement park which used the name Krofft. The appellant, Krofft Development Corporation, designed and constructed the carousel. Omni International Park, Inc. and Krofft Enterprises, Inc. created a joint venture called Krofft International which operated the park and carousel under the name of The World of Sid & Marty Krofft.

Weston was employed by Krofft International as a vice president and was general manager of The World of Sid & Marty Krofft until he left in the fall of 1976. His testimony was that Krofft International had no connection with appellant Krofft Development and that when the carousel malfunctioned in July 1976 he hired an engineer (appellee Quo Modo) to redesign the carousel and appellee Superior Rigging to reconstruct it in accordance with the engineer's design. In doing so he acted solely for Krofft International as he had no connection with or authority to act for appellant.

Fincher, president of Quo Modo, testified that he was called to the Omni after the carousel had been in operation for a period of time and had malfunctioned. Weston hired him to redesign the carousel to correct the problem as quickly as possible. Fincher needed the original plans of the carousel which were in appellant's offices in California. A telephone call was placed from Weston's office in the Omni to Tanabie, an engineer working for appellant in California whom Fincher had met when the amusement park was being constructed, and Fincher asked him for a copy of the plans. Tanabie said he would send the plans and also said that they had had a lot of problems with the carousel and hoped that Fincher would do what was necessary to get it back into operation. Fincher received the plans, used them and returned them. He had no other contact with

appellant. When Quo Modo's redesign work was finished, the cost was originally billed not to appellant but to Krofft International and the billing was handcarried to the Omni. Fincher did not know the difference between the variously named Krofft entities and he assumed that appellant was responsible because it had designed and built the carousel.

Tumbleston, vice president and general manager of Superior Rigging, testified that he had received a letter from Weston instructing him to proceed to reconstruct the carousel in accordance with the redesign done by Quo Modo. He never had any contact with appellant. Superior Rigging's records show that as the work progressed it billed appellant for a portion of its work but that the billing was paid by The World of Sid & Marty Krofft. Subsequent unpaid billings were sent to The World of Sid & Marty Krofft for a time, then to Krofft International, and finally to appellant again.

Although appellees' witnesses state they did not distinguish one Krofft entity from another, appellees' records both contain correspondence from the creditors' committee for Krofft International pertaining to resolution of their claims. The evidence is clear that Krofft International had a contract with appellees through Weston, its vice president. Superior Rigging had no contact whatsoever with appellant and the only contact Quo Modo had was when Fincher asked appellant's employee Tanabie for the plans of the carousel.

Appellees claim the evidence establishes an implied contract under Code Ann. § 3-107, which states that when one renders services to another, which the latter accepts, a promise is implied to pay the reasonable value thereof. Such an implied in fact contract requires the receipt and acceptance of benefit from appellees by appellant. As there is no evidence that appellant received or accepted any benefit of the work of appellees, appellant cannot be held responsible under such a theory.

Appellees also claim that Weston and Tanabie contracted with them as agents for appellant.

"The relation of principal and agent arises whenever one person, expressly or by implication, authorizes another to act for him . . ." Code Ann. § 4-101. There is no evidence of any express authorization by appellant making Weston or Tanabie its agents. Both appellees dealt with Weston who was an officer of Krofft International. Weston's testimony that he had no connection with or authority to act for appellant is uncontradicted.

There is also no evidence of Weston and Tanabie having apparent authority to act as agents for appellant. Apparent authority results from the conduct of the principal which makes it appear to

third persons that the agent is authorized to act for the principal. 1 EGL 469, Agency, § 33. The only contact with anyone from appellant was Fincher's telephone call to Tanabie to ask for the plans. Fincher knew that Tanabie was an employee engineer of appellant. However there is no evidence of any conduct of appellant that created Tanabie or Weston its agents by implication. Fincher's testimony of his conversation with Tanabie also does not reveal any direction to Fincher to perform work for appellant. In that conversation Tanabie told him that he hoped Fincher would get the problem solved quickly because it had been a problem for them and that he hoped Fincher was able to do what was necessary to put the carousel back into operation and get the problem off their hands.

Fincher's knowledge that appellant had designed and built the malfunctioning carousel and his assumption that appellant was responsible therefor, and Tanabie's hope that Fincher would get the carousel back into operation, did not create Tanabie or Weston agents of appellant to contract with appellees or create a contract between appellant and appellees. Accordingly, the trial court's finding for appellees was clearly erroneous. Code Ann. § 81A-152 (a) (Ga. L. 1969, pp. 645, 646, 1970, pp. 170, 171).

2. In view of the foregoing the remaining enumerations need not be discussed.

*Judgment reversed. McMurray, P. J., and Pope, J., concur.*

DECIDED APRIL 7, 1981 —
REHEARING DENIED APRIL 30, 1981 —

*Jeffrey W. Kelley, Frank Love, Jr.,* for appellant.
*James L. Flemister,* for appellees.